## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION

| | | |
|---|---|---|
| PROFESSIONAL LIABILTY INSURANCE SERVICES, INC. | § § § | CIVIL ACTION NO. |
| VS. | § § | 1:15-cv-958    JURY |
| U.S. RISK, INC. and CRYSTAL JACOBS | § | |

### PLAINTIFF'S COMPLAINT,
### APPLICATION FOR PERMANENT INJUNCTION, AND
### REQUEST FOR TRIAL BY JURY

**COMES NOW**, Professional Liability Insurance Services, Inc., ("PLIS®" or the "Company") and files this Complaint and Application for Permanent Injunction, seeking injunctive relief against U.S. Risk, Inc. ("U.S. Risk") and Crystal Jacobs ("Jacobs" and collectively with U.S. Risk, "Defendants"), and in support thereof would show unto the Court the following:

### JURISDICTION AND VENUE

1.      Jurisdiction of this Court is predicated upon federal question jurisdiction, 28 U.S.C. §§ 1331, and the original jurisdiction granted under 28 U.S.C. §§ 1337(a). Jurisdiction is based on 17 U.S.C. 501. The Court has supplemental jurisdiction under 28 U.S.C. §§ 1367(a) over Plaintiff's state law claims because they are so related to the federal question claims that they form part of the same case or controversy and stem from the same nucleus of facts on which the federal claims are based.

2.      Venue is proper for this Count pursuant to 28 U.S.C. §§ 1391 and 1400. Defendants reside in the State of Texas and in this Judicial District.

## THE PARTIES

3.     PLIS is a Texas corporation organized and existing under the laws of the State of Texas with its principal place of business located in Lago Vista, Texas.

4.     Defendant U.S. Risk is a Texas corporation doing business in Travis County, Texas.  Defendant is in the business of selling insurance policies.  Defendant U.S. Risk may be served through its registered agent, Jack M. Cleveland, 700 North Pearl Street, 25th Floor, Dallas, Texas 75201.   Defendant has a branch location in this Judicial District and Division. Defendant's Austin branch is located at 900 S. Capital of Texas Highway, Suite 450, Austin, Texas 78746.  Defendant has at least 5 employees working at the Austin branch.

5.     Defendant Jacobs is an individual who resides at 97 Wildflower Boulevard, Marble Falls, Texas 78654.

## STATEMENT OF FACTS

### *Innovation by PLIS*

6.     PLIS develops, markets, sells, and administers insurance programs—from identifying the risk, identifying the insurable interest, describing and marketing the program to underwriters, writing the policies, determining exclusions, marketing and selling the policies to clients, and administering the policies.   Approximately seventeen years ago, PLIS invested time and money to create an insurance policy/application entitled "Trade Name Restoration Loss of Business Interruption Policy and Incident Response Insurance for Food Borne Illness Policy." PLIS labeled the policies and application as "Copyrighted …. 2000".  PLIS applied and received a United States copyright for both the application and the policies (hereinafter "Copyrighted Material").  To further protect their investment in their business reputation and the policies, PLIS

filed for and received a federal registered trade mark for "Professional Liability Insurance Services®", "PLIS®", "TNR" and "Trade Name Restoration." In addition, as a matter of course PLIS copyrighted its brochures regarding its policies, including its TNR policy.

7. PLIS has used the trademarks "Professional Liability Insurance Services," "PLIS", "Trade Name Restoration", "TNR", "Trade Name Restoration", "Business Interruption Policy", "Trade Name Trigger" and combinations of these marks on a continuous basis since as early as 1999 (collectively, the "Trademarks"). PLIS has spent substantial time and money developing and promoting these Trademarks and goodwill generated from these Trademarks.

8. PLIS created and has used a unique phrase to describe an aspect of the TNR Policy and has applied for a copyright to the phrase "Trade Name Trigger." The use of the phrase "Trade Name Trigger" in connection with PLIS's TNR policies is such that the phrase has developed a close connection with the TNR policy such that the phrase is identifiable as referring to the PLIS TNR policy, and therefore deserving of trademark protection as well. PLIS has been using the phrase "Trade Name Trigger" since 2001. PLIS has filed for both copyright and trademark protection for the phrase "Trade Name Trigger" prior to filing this Complaint.

### Crystal Jacobs' Employment with PLIS

9. Defendant Crystal Jacobs began working for PLIS for a brief period from June 2002 through October 2003 and on a continual basis in August 2004. Prior to her employment with PLIS, Jacobs had not worked in the insurance industry. Until Jacobs resigned from PLIS in June 2013, she worked in claims and underwriting. As a result of her positions with PLIS, Jacobs had access to PLIS's proprietary information, including its policies, pricing, marketing, and other confidential information (collectively, PLIS's "Proprietary Information" and

collectively with the Copyrighted Materials and Trademarks, the "Intellectual Property"). PLIS diligently safeguarded this material by, among other things, requiring all of its employees to periodically sign: acknowledgements of PLIS's trade secrets and confidential information; confidentiality agreements; and email acknowledgments of the confidential nature of the business and its Intellectual Property.

10.     Jacobs could be under no illusion that the information she obtained as part of her employment was proprietary and confidential to PLIS. Jacobs signed a trade secrets and confidentiality information acknowledgment and confidentiality agreement in March 2002. She signed a similar agreement again in August 2004. She again acknowledged the Company's trade secrets and confidential information in October 2011. In addition, throughout her employment with PLIS, Jacobs received and signed email acknowledgements regarding the Company's trade secrets and proprietary information. For much of this period, Jacobs worked from home, which did not absolve her from her legal and contractual duties to protect the Company's intellectual property.

### U.S. Risk's Attempt to Enter the Trade Name Restoration Market

11.     In 2006, U.S. Risk attempted to offer a policy that unfairly competed with PLIS's established Trade Name Restoration. In a 2006 lawsuit, PLIS alleged that U.S. Risk was infringing upon PLIS's copyrighted intellectual property. That matter settled and was dismissed by stipulation of dismissal in May 2006 ("2006 Agreement"). As part of the settlement, U.S. Risk agreed to modify one of its allegedly infringing policies.

*Jacobs joins U.S. Risk, and Defendants Use PLIS's Intellectual Property*

12.     Jacobs joined U.S. Risk in October 2013, purportedly to work on policy wording and on U.S. Risk's errors and omissions program.  However, Jacobs and U.S. Risk soon began mirroring and using PLIS's Trade Name Restoration marketing materials, and likely other Intellectual Property, for U.S. Risk's newest venture into the food borne illness/trade name insurance market.  Jacobs acted as an agent and employee of U.S. Risk within the scope of her employment and/or within the authority delegated to her by U.S. Risk and/or under U.S. Risk's grant of authority when Jacobs used and/or infringed upon PLIS's Intellectual Property, and therefore her acts are imputed to U.S. Risk under the doctrines of respondeat superior, agency, and vicarious liability.  Defendants used this Intellectual Property without PLIS's fore-knowledge or consent.

13.     PLIS recently learned that Jacobs, under the banner of U.S. Risk, is actively marketing a "Reputation Recovery Insurance Business Interruption and Extra Expense Coverage" policy to underwriters through a twenty-eight page/slide proposal (the "Proposal"). Large portions of this Proposal were plagiarized and lifted with minimal rewording from PLIS's Intellectual Property.

14.     On the cover page and on the banner on the top of each page of this Proposal, Defendants blatantly attempt to confuse the source of their plagiarized policy by advertising U.S. Risk Pros as "Professional Liability Insurance Solutions."  As set forth above, PLIS received a federally registered trademark for "Professional Liability Insurance Services®" in 2007 and PLIS has continuously used this name since 1988.

15.     In addition, Defendants' proposal mirrors PLIS's 2013 presentation materials to London underwriters, which materials were carefully guarded and only disclosed in confidence

to said underwriters for limited business purposes.   Jacobs was a part of PLIS's 2013 presentation team and had access to these materials.   Defendants have now blatantly mirrored PLIS's proprietary materials.   For example, and without limitation, page 13 of Defendants' Proposal mimics a slide in PLIS's 2013 presentation, right down to the almost identical exclamation bubble:

**US Risk's/Jacobs' Proposal:**                                      **PLIS®'s Proprietary Materials:**



16.      Throughout the Proposal, Defendants repeatedly misuse PLIS's Intellectual Property.  Defendants used PLIS's proprietary term "Trade Name Trigger" without consent, and Defendants repeatedly employ PLIS's trigger terminology to describe their infringing Proposal. Defendants also exploit the legal research that PLIS paid for by advertising that shared limits are not available in certain states.   Defendants explain aggregation of claims using the same examples that PLIS offered in its 2013 Presentation, namely that claims can be aggregated similar to certain disaster aggregation.   Again, instead of even pretending to create their own

explanatory material, Defendants directly copy PLIS's Tyson supply chain example to demonstrate how the policy could apply to suppliers.

17.   Finally, Defendants' Proposal acknowledges the uniqueness of the Trade Name Restoration Policy that PLIS developed and that Defendants seek to misuse without consent.   In Defendants' slide entitled "Opportunities & Universe for Writing", Defendants describe estimated premiums as:

> "-Given uniqueness of the product, there is a learning curve that has to be overcome with education through presentation, product highlights and directly assisting agents in their first few pitches . . . ."

Defendants describe the commissions as:

> "-There are 3 main wholesale brokers in the U.S. who are consider [sic.] "experts" in this line of business – in order to give us a leading edge, we need to be able to offer competitive commissions."

18.   Of course, the "unique" product was not invented or developed by Defendants. Instead, Jacobs learned of the Intellectual Property at PLIS and is now using the Intellectual Property that she agreed to keep confidential in order to benefit US Risk.   In addition, the marketing for this "unique" product is largely mimicked from PLIS's proprietary materials. Moreover, Defendants seek to usurp PLIS's "leading edge" in this market by using the Intellectual Property that PLIS developed and marketed without putting in the years or monetary investment.

19.   PLIS developed the Trade Name Restoration policy.   As Defendants admit in their Proposal, the TNR policy is unique.   PLIS protected its Intellectual Property inherent in the policy and marketing of the policy by systematically requiring its employees to keep the property confidential, trademarking its intellectual property, and copyrighting the policy.   PLIS markets and sells the policy throughout the United States.   Since as early as 1999, PLIS has used,

7

advertised, and promoted the intellectual property, including the registered and unregistered marks, the copyrighted materials, the term "Trade Name Trigger", all as more specifically set forth above. As a result, this Intellectual Property is well known for its uniqueness and has garnered many new and repeat customers and other goodwill as a result of its widespread use by PLIS.

## FEDERAL COPYRIGHT INFRINGEMENT

20.	PLIS reiterates and adopts each and every allegation of the aforementioned paragraphs as if set forth herein verbatim.

21.	PLIS asserts that Defendants' conduct constitutes an infringement of their copyrighted term "Trade Name Trigger" in violation of Title 17 U.S.C. § 501 *et seq.* Such infringement is the proximate cause of PLIS's damages as set forth above and Defendant's conduct has caused damages to PLIS in the past and will continue to cause damages in the future, including damages pursuant to 17 U.S.C. §§ 504 and 505.

22.	PLIS has complied in all respects with 17 U.S.C. §§ 101 *et seq.* and secured exclusive rights and privileges in and to the copyrights. PLIS is the sole proprietor of all rights, title, and interest in and to the copyrights.

23.	Defendants intended their actions to cause confusion or mistake or to deceive.

24.	Defendants misappropriated and used without authorization PLIS's copyrighted material, in violation of Title 17 U.S.C. § 501 *et seq.* Such misappropriation and continued unauthorized use of PLIS's copyrighted material by U.S. Risk has caused PLIS substantial and irreparable injury and damage, the amount of which is not capable of determination, and unless restrained, will cause further irreparable injury, leaving PLIS without an adequate remedy at law.

## FEDERAL TRADEMARK INFRINGEMENT

25.     PLIS reiterates and adopts each and every allegation of the aforementioned paragraphs as if set forth herein verbatim.

26.     Defendants activities constitute infringement of PLIS's Trademarks in violation of the Lanham Trademark Act, including but not limited to 15 U.S.C. § 1114(1).

27.     PLIS has used the trademarks "Professional Liability Insurance Services," "PLIS", "Trade Name Restoration", "TNR", "Trade Name Restoration", "Business Interruption Policy", "Trade Name Trigger" and combinations of these marks on a continuous basis as early as 1999 (collectively, the "Trademarks"). PLIS has spent substantial sums of money and thousands of hours marketing, advertising, and promoting these Trademarks in connection with its products and services. As a result of expending substantial time and money to promote its Trademarks, products, and services, PLIS has developed substantial goodwill in its name, which is now associated with the services it provides.

28.     PLIS also has registered trademarks in "TNR," "Trade Name Restoration," "Professional Liability Insurance Services", and "PLIS". PLIS's Trademarks have come to mean and be understood by brokers, underwriters, customers, throughout the insurance market, and the public as representative of PLIS's products, if not synonymous with PLIS. PLIS provided notice of the registration of these marks and/or Defendants, including Jacobs, had actual knowledge of said registration.

29.     Both PLIS's unregistered and registered marks are entitled to the protection of § 43 of the Lanham Act. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767-68, 112 S. Ct. 2753, 2757, 120 L. Ed. 2d 615 (1992).

30.     In regard to the "PLIS" and "Professional Liability Insurance Services" marks, PLIS advertises, markets, and sells its products exclusively under these marks, and these marks are the means by which PLIS distinguishes its offerings from its competitors' offerings.

31.     Plaintiff and Defendants market and sell their products through similar channels, including throughout Texas, the United States, and to underwriters abroad.

32.     Moreover, the audiences for PLIS's and U.S. Risks' products extensively overlap, and upon reason and belief, are nearly identical. Defendants' unlicensed and unauthorized use of the Trademarks has diluted the quality and value of Plaintiff's Trademarks.

33.     Defendants' use of the Trademarks is likely to cause confusion, mistake, or deception. Defendants unauthorized use are likely to confuse brokers, underwriters, customers, others throughout the insurance market, and the public into believing that the policies and product U.S. Risk is offering belong to or were originated by Defendants or are authorized by PLIS, damaging PLIS and harming the public.

34.     Upon reason and belief Defendants' Proposal, advertising, and marketing constitute willful, pervasive, unauthorized and/or infringing use of these Trademarks with the purpose and intent to mislead or confuse the public as to the origin and authenticity of the infringing products and trading on PLIS's business reputation and Intellectual Property. Defendants intended their actions to cause confusion or mistake or to deceive.

35.     Because Defendants infringement of PLIS's Trademarks was willful, within the meaning of the Lanham Act, the award of actual damages and profits should be trebled pursuant to 15 U.S.C. § 1117(b). Alternatively, PLIS is entitled to statutory damages under 15 U.S.C. § 1117(c) and actual damages.

36.     Plaintiff is also entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a) and to an order compelling the impounding of all infringing materials being used, offered, marketed, or distributed by Defendants pursuant to 15 U.S.C. § 1116.

37.     Plaintiff has no adequate remedy at law for Defendants wrongful conduct because, among other things, (a) Plaintiffs' Trademarks are unique and valuable intellectual property, (b) Defendants' infringement constitutes harm to Plaintiff such that Plaintiff could not be made whole by any monetary award, (c) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin or authenticity of the infringing materials, and (d) Defendants' wrongful conduct, and the resulting damage to Plaintiff, is continuing.

## FEDERAL UNFAIR COMPETITION

38.     PLIS reiterates and adopts each and every allegation of the aforementioned paragraphs as if set forth herein verbatim.

39.     PLIS advertises, markets, and sells its products exclusively under the "PLIS" and "Professional Liability Insurance Services" trademarks (the "PLIS Marks") and these marks are the means by which PLIS distinguishes its offerings from its competitors' offerings.

40.     Because of Plaintiff's continuous and exclusive use of the PLIS Marks, the PLIS Marks have come to mean, and are understood by brokers, underwriters, customers, other businesses in the insurance market and the public to signify products or services of PLIS.

41.     Defendants' unlicensed and unauthorized use of the PLIS Marks is likely to cause confusion, mistake or deception as to the source, origin, or authenticity of Defendants' product. Defendants' unauthorized use is likely to confuse brokers, underwriters, customers, other

businesses in the insurance market and the public that the policies and product U.S. Risk is offering belong to or were originated by Defendants or are associated, endorsed by, sponsored by, or authorized by PLIS, damaging PLIS and harming the public.

42.     Defendants' wrongful conduct includes the use of PLIS's marks, name, and/or product offerings that are deceptively similar.

43.     Defendants intended their actions to cause confusion or mistake or to deceive. Upon information and belief, Defendants engaged in such wrongful conduct with the willful purpose of misleading or confusing customers and the public as to the origin and authenticity of the goods and services offered, marketed, or distributed in connection with PLIS's mark and name, and trading upon PLIS's goodwill and business reputation. Defendants' conduct constitutes (a) false designation of origin, (b) false or misleading description, and (c) false or misleading representation that the services or products originate from or are authorized by PLIS, all in violation of § 48 of the Lanham Trademark Act

44.     Defendants' wrongful conduct is likely to continue if not restrained and enjoined.

45.     As a result of Defendants' wrongful conduct, PLIS has suffered and will continue to suffer damages.   PLIS is entitled to injunctive relief and to an order compelling the impounding of all imitation marks being used, offered, advertised, marketed, or distributed by Defendants. PLIS has no adequate remedy at law for Defendants' wrongful conduct because, among other things, (a) PLIS's marks, including its name, are unique and valuable intellectual property, (b) Defendants' advertising and marketing, and distribution of goods constitutes harm to PLIS such that PLIS could not be made whole by any monetary award, and (c) Defendants' wrongful conduct, and the resulting damage to PLIS is continuing.

## COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

46.     PLIS reiterates and adopts each and every allegation of the aforementioned paragraphs as if set forth herein verbatim.

47.     PLIS has used the trademarks "Professional Liability Insurance Services," "PLIS", "Trade Name Restoration", "TNR", "Trade Name Restoration", "Business Interruption Policy", "Trade Name Trigger" and combinations of these marks on a continuous basis since as early as 1999 (collectively, the "Trademarks"). PLIS has spent substantial sums of money and thousands of hours marketing, advertising, and promoting these Trademarks in connection with its products and services. As a result of expending substantial time and money to promote its Trademarks, products, and services, PLIS has developed substantial goodwill in its Trademarks, which is now associated with the services it provides.

48.     Defendants' actions, as set forth more specifically above, constitute common law trademark infringement and unfair competition and have created and will continue to create a likelihood of confusion, to the irreparable injury of PLIS unless restrained by this Court. PLIS has no adequate remedy of law for this injury.

49.     Defendants intended their actions to cause confusion or mistake or to deceive. Defendants acted with full knowledge of PLIS's protected Trademarks and PLIS's statutory and common law rights therein and without regard to the likelihood of public confusion created by Defendants activities.

50.     Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with PLIS, and to pass-off their goods as those of PLIS, to the great and irreparable injury of PLIS. In addition to being entitled to injunctive relief, PLIS has been damaged in an amount to be determined at trial and is entitled to such damages.

## COMMON LAW TRADEMARK INFRINGEMENT, UNFAIR COMPETION, AND TEXAS STATUTORY TRADEMARK DILUTION

51.     PLIS reiterates and adopts each and every allegation of the aforementioned paragraphs as if set forth herein verbatim.

52.     Defendants are making unlicensed and unauthorized commercial use of the Trademarks.  Defendants' activities have caused and will continue to cause dilution of the quality and value of PLIS's Trademarks.  Defendants intended their actions to cause confusion or mistake or to deceive.  Defendants' conduct blurs the public's exclusive identification of the Trademarks with PLIS and dilutes the value of PLIS's intellectual property. As a result of Defendants' actions referenced here and above, PLIS has suffered damages and will continue to suffer irreparable injury to its business reputation and trade name.

53.     Defendants' acts constitute a violation of Tex. Bus. & Comm. Code § 16.103 (in regard to the PLIS Marks) for infringement, injury to business reputation, and dilution of PLIS's Trademarks.  Defendants have caused and will continue to cause injury to PLIS, and PLIS is entitled to injunctive relief and damages.

## BREACH OF CONTRACT

54.     Plaintiff reiterates and adopts each and every allegation of the aforementioned paragraphs as if set forth herein verbatim.

55.     Jacobs entered into at least one confidentiality agreement with PLIS.

56.     Plaintiff performed or substantially performed all of its obligations under both of these agreements.

57.     Jacobs breached the confidentiality agreement, by among other things, duplicating and otherwise improperly using PLIS's proprietary information as set forth more specifically above.

## TORTIOUS INTERFERENCE WITH CONTRACT AND PROSPECTIVE BUSINESS RELATIONS

58.     Plaintiff reiterates and adopts each and every allegation of the aforementioned paragraphs as if set forth herein verbatim.

59.     U.S. Risk tortiously interfered with the confidentiality agreement between Jacobs and PLIS, in aiding and abetting Jacobs' breach of the confidentiality agreement.

60.     These intentional and willful acts of interference with Plaintiff's contracts, by U.S. Risk, caused Plaintiff to sustain damages.  Plaintiff's damages are a direct and proximate result of the wrongful conduct of defendant. Plaintiff's injury resulted from defendant's gross negligence, malice, and/or actual fraud, which entitles Plaintiff to exemplary damages under Texas Civil Practice & Remedies Code Section 41.003(a).

## APPLICATION FOR INJUNCTIVE RELIEF

61.     Plaintiff reiterates and adopts each and every allegation of the aforementioned paragraphs as if set forth herein verbatim.

62.     Plaintiff, after notice and hearing, seeks a permanent injunction restraining U.S. Risk and its agents (including Jacobs), servants, employees, representatives, attorneys, and those in active concert or participating with U.S. Risk, from directly or indirectly using in any manner or providing to any member of the public any materials that are substantially similar in form or content to the Intellectual Property.

## ATTORNEYS FEES

63.     Plaintiff was left with no choice but to employ the undersigned attorneys and has agreed to pay them a reasonable fee for their services based upon the reasonableness of their services performed and the reasonable value thereof at the time and place incurred.  Accordingly, pursuant to applicable state and federal law, including Chapter 38 (breach of contract) of the Tex. Civ. Prac. & Rem. Code and the Lanham Act, Plaintiff seeks the recovery of its reasonable and necessary attorneys' fees.

## JURY DEMAND

64.     Pursuant to FRCP 38, Plaintiff hereby requests a trial by jury in the above styled and numbered cause.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that Defendants be cited to appear and file an answer herein, and that Plaintiff be granted the relief set forth above, including the following:

a.     permanent injunctive relief as set forth above;

b.     that the Court enjoin and restrain Defendants and all others in active concert or participation with Defendant from making any other infringing use of the Trademarks;

c.     that the Court impound of Defendants products or materials bearing Plaintiff's "PLIS" and "Professional Liability Insurance Solution" marks pursuant to 15 U.S.C. § 1116(a)(d)(1)(A) and 17 U.S.C. § 503;

d.     Defendants  be compelled to account to Plaintiff for any and all profits derived by Defendants for products or services found to violate Plaintiff's copyright and trademark rights and/or to pay actual damages to Plaintiff for the acts forming the basis of this Complaint;

e.   that Defendants pay Plaintiff's general, special, actual and statutory damages, including:

     i.   statutory damages pursuant to federal and Texas law;
     ii.   actual damages;
     iii.   Defendants' profits gained from their wrongful acts;
     iv.   treble damages;
     v.   Plaintiff's costs and attorney's fees;
     vi.   pre- and post-judgment interest at the maximum amount allowed by law;

f.   Such other and further relief, whether legal or equitable, to which Plaintiff may be justly entitled.

Respectfully submitted,


*/s/ A. Boone Almanza*
A. Boone Almanza
State Bar No. 01579001
Jacob Scheick
State Bar No. 24060563
Almanza, Blackburn & Dickie, LLP
2301 S. Capital of Texas Highway, Building H
Austin, Texas 78746
(512) 474-9486; (512) 478-7151 FAX

Tom Clark
Clark, Malouf & White, LLP
12222 Merit Drive, Ste 340
Dallas, Texas 75251
214-559-4411 (direct)
214-559-4466 (fax)

**ATTORNEYS FOR PLAINTIFF**